SALASNEK FISHERIES, INC., APPELLANT, *v.* CASHNER ET AL.,
APPELLEES.

[Cite as Salasnek Fisheries, Inc., v. Cashner, 9 Ohio App. 2d 233.]

(No. 650—Decided January 10, 1967.)

*Messrs. Faust, Harrelson & Thornburgh,* for appellant.
*Mr. William B. Saxbe,* attorney general, and *Mr. Donald
A. DeCessna,* for appellees.

CRAWFORD, J. This is an appeal on questions of law from
a summary judgment for the defendants, appellees herein. The
error assigned is the overruling of plaintiff-appellant's motion
for summary judgment and the sustaining of defendants' simi-
lar motion.

There is no bill of exceptions in the regular sense of the
term as required by the Supreme Court. *Smith* v. *Diamond
Milk Products, Inc.* (1964), 176 Ohio St. 143. However, the
parties have stipulated that the decision and judgment of the

234

Court of Common Pleas was based upon the pleadings, affidavits, oral testimony taken at a hearing on the temporary restraining order, and other documents filed before the judgment, which it is agreed shall constitute a bill of exceptions.

The petition alleges that plaintiff is a Michigan corporation engaged in the business of preparing, processing, packaging and delivering sea food and fish at wholesale to retail outlets within the state of Ohio and elsewhere. Plaintiff seeks to enjoin the defendants, officials of the Ohio Division of Wildlife, from interfering with its trucks and carriers, confiscating its fish, and arresting plaintiff and its customers.

Defendants answer that they are engaged in enforcing the provisions of Chapters 1531 and 1533, Revised Code, particularly Section 1533.63, Revised Code, which provides that no person shall take, catch or possess, among other items, a (yellow) perch less than 8½ inches in length or a (yellow) perch fillet less than 5⅝ inches in length. This section also provides that "all fish brought into the state from another state or country shall be subject to the laws of this state."

The facts are not in dispute. Plaintiff obtains from commercial fishermen fish taken outside Ohio, particularly from the Canadian waters of Lake Erie, and distributes in Ohio perch of lesser size than permitted by Section 1533.63, Revised Code. Hence, there is no genuine issue as to any material fact, and it remains only for the court to determine whether a party moving for a summary judgment is entitled to the same as a matter of law. Section 2311.041, Revised Code.

Plaintiff contends that, inasmuch as it was lawful to take the fish at the place where they were taken and to process them in Canada or in Michigan where they were processed, the Ohio statute is not applicable to them, so that defendants' action constitutes an unwarranted interference with plaintiff's property rights, deprives plaintiff thereof without due process of law, is an unlawful interference with interstate commerce, and that the statute as so applied is unconstitutional.

The statute in question is a conservation measure, and the conservation of natural resources is within the police power of the state of Ohio as granted by Section 36, Article II of the Constitution. *State* v. *Martin* (1957), 105 Ohio App. 469.

The ownership of wild animals, fish and game is in the

state, and individual rights therein are limited and subject to state police regulation. The state has the power and duty to preserve them for the benefit of all the people. To that end and to make enforcement of conservation laws effective, it may regulate their possession within the borders of the state, whatever their point of origin. Any relationship to interstate commerce is incidental and inconsequential.

These principles have been declared and firmly established in the cases of *Roth* v. *State* (1894), 51 Ohio St. 209; *New York, ex rel. Silz,* v. *Hesterberg, Sheriff* (1908), 211 U. S. 31, 53 L. Ed. 75, 29 S. Ct. 10; and *Bayside Fish Flour Co.* v. *Gentry* (1936), 297 U. S. 422, 80 L. Ed. 772, 56 S. Ct. 513.

In the *Roth case* the Supreme Court of Ohio held:

"It is an offense, under Section 6964, of the Revised Statutes, to sell quail in this state, except between the tenth day of November and the fifteenth day of December, though such quail were killed outside of the state, and where it was lawful to kill the same. The section is constitutional."

In *New York, ex rel. Silz,* v. *Hesterberg,* the Supreme Court of the United States held that: subject to constitutional limitations, the legislature of a state may pass measures for the protection of the people in the exercise of the police power and is the judge of their necessity and expediency; it is within the police power of a state to prohibit possession of game during the closed season even if brought from without the state; and a police measure otherwise within the constitutional power of the state will not be held unconstitutional under the commerce clause of the Federal Constitution because it incidentally and remotely affects interstate commerce.

On page 42 of 211 U. S. (*New York, ex rel. Silz,* v. *Hesterberg*), the court said, "the Constitution did not intend, in conferring upon Congress an exclusive power to regulate interstate commerce, to take from the States the right to make reasonable laws concerning the health, life and safety of its citizens, although such legislation might indirectly affect foreign or interstate commerce"; and, on page 43, the court said that "owing to the likelihood of fraud and deceit in the handling of such game the possession of game of the classes named is likewise prohibited, whether it is killed within or without the State."

In the case of *Bayside Fish Co.* v. *Gentry,* 297 U. S. 422,

upholding the Fish and Game Code of California as valid, the court held that the regulation was not invalid under the commerce clause of the Constitution, since in purpose and in direct operation it is confined to a merely local activity, and if it affects interstate or foreign commerce the result is purely incidental; and that it is not void under the due process clause of the Fourteenth Amendment because indirectly it is a deterrent to the exercise of the right to contract for the purchase of sardines taken from the high seas and brought into the state.

The court said, at page 426:

"* * * to the extent that the act deals with the use or treatment of fish brought into the state from the outside, its legal justification rests upon the ground that it operates as a shield against the covert depletion of the local supply, and thus tends to effectuate the policy of the law by rendering evasion of it less easy. * * *

"* * * The provisions of the act assailed are well within the police power of the state, as frequently decided by this and other courts. * * *"

Those cases have, in our opinion, set the course which was properly followed by the Court of Common Pleas in this case.

The judgment will be, and hereby is, affirmed.

*Judgment affirmed.*

SHERER, P. J., and KERNS, J., concur.