The STATE of Wyoming on the relation of FIRE FIGHTERS LOCAL NUMBER 946, I. A. F. F., and Thomas E. Hood, Plaintiffs,

v.

The CITY OF LARAMIE, Wyoming, a municipal corporation, Russell C. Keck, Mayor, and Leo F. Malody, Charles R. Fortman, William T. Ward, and Larry Deaver, City Councilmen of the City of Laramie, Defendants.

No. 3633.

Supreme Court of Wyoming.

Feb. 15, 1968.

Alfred M. Pence, Laramie, for plaintiffs.

Thomas S. Smith, Laramie, for defendants.

Jack D. Emery, City Atty., Casper, and A. Joseph Williams, City Atty., Cheyenne, amici curiae.

Before HARNSBERGER, C. J., and GRAY, McINTYRE and PARKER, JJ.

Justice McINTYRE delivered the following opinion in which Justice GRAY concurs.

Fire Fighters Local No. 946, I.A.F.F., and its president, Thomas E. Hood, brought a mandamus action in the district court of Albany County to compel the City of Laramie to comply with Ch. 197, S.L. of Wyoming 1965 (Tit. 27, Ch. 14, W.S.1957, 1965 Cum.Supp.). The city defended on the ground that the statute sought to be enforced is unconstitutional and void.

Without resolving the case and entering a final judgment, the district court elected to reserve to us important and difficult constitutional questions, pursuant to authorization for such procedure contained in § 1–191, W.S.1957, and Rule 52(c), W.R.C.P.

This case is similar to the action which was before us in State ex. rel. Fire Fighters Local 279, v. Kingham, Wyo., 420 P.2d 254. In the *Kingham* case, we first inquired whether or not the reserved questions merited our consideration. We then decided the proceeding could be disposed of without answering the reserved constitutional questions, and on p. 257, we assigned as one of the reasons the fact that the City of Cheyenne in the *Kingham* case had taken advantage of benefits under the act and therefore ought not to be heard to question the validity of the legislation.

█ In the instant case, the city has not participated in any of the benefits of the act in question. Moreover, it is the second case of this kind to come before us, and we are persuaded there is a broad public interest in the constitutional questions presented. In view of this, we will undertake to answer each of the questions reserved.

It has been argued that our answers are essential because Oliver B. Knight, a citizen and taxpayer of Laramie, has petitioned to intervene and to assert the interest of taxpayers generally. His petition was denied by the district court. We need not consider whether the denial was proper, because the parties are agreed Knight's status in the case need not be considered if the reserved constitutional questions are answered without regard to his attempted intervention.

The questions reserved have been designated by letters in alphabetical order, A through F. We will state each question separately as the discussion of that particular question is commenced. In each question the court has referred to provisions

of Title 27, Ch. 14, W.S.1957, as amended. It is apparent the citation in each instance is intended as a citation to W.S.1957, 1965 Cum.Supp. The provisions questioned in each instance are those of Ch. 197, S.L. of Wyoming 1965. Also, it appears the act in question has not at any time been amended.

Before entering into a discussion of the reserved questions, we should point out the act we are concerned with deals with the matter of wages, hours of service, and working conditions. It should be understood that our answers to the questions propounded necessarily deal with the principles involved and not precise questions which might arise in connection with the terms of a collective bargaining agreement, which the statute is designed to bring about.

"A. Do the provisions of Title 27, Chapter 14, Wyoming Statutes, 1957, as amended, violate Article 3, Section 37, of the Wyoming Constitution, by delegating to special commissioners the power to perform municipal functions delegated to the members of the City Council of the City of Laramie, Wyoming, or the power to make, supervise or interfere with municipal money and funds of the City of Laramie, Wyoming?"

█ Counsel for the city argues the weight of authority opposes the right of public employees to bargain collectively with their governing bodies. Annotation 31 A.L.R.2d 1142, 1155–1159, is relied on. Counsel then argues if Wyoming's collective bargaining statute for fire departments is permitted to stand, the police and other employees will immediately fall in line to request legislation of this type.

Of course, all of this is argument which should be directed to the legislature and not to the courts. To say that most states do not permit public employees to bargain collectively with their governing bodies is not to say that Wyoming cannot do so, if the legislature considers it advisable. See Professional Fire Fighters,

Inc. v. City of Los Angeles, 60 Cal.2d 276, 32 Cal.Rptr. 830, 384 P.2d 158, 169.

As far back as 1933 a legislative policy with respect to union principles was announced for our state in what is now § 27–239, W.S.1957, these words being used:

"It is hereby declared to be the policy of the State of Wyoming that workers have the right to organize for the purpose of protecting the freedom of labor, and of bargaining collectively with employers of labor for acceptable terms and conditions of employment, and that in the exercise of the aforesaid rights, workers should be free from the interference, restraint or coercion of employers of labor, or their agents in any concerted activities for their mutual aid or protection."

Under the 1933 statement of policy, there is no exclusion of public employees. Were it not for the subsequent enactment of Ch. 197, S.L. of Wyoming 1965, we might nevertheless find it necessary to join what the city calls the weight of authority, which in essence is simply a rule of statutory construction, and hold public employees do not have a right to bargain collectively. Indeed, that may even now be the situation for all public employees, except city firemen. We are not called upon to decide that question in this case and it would be improper to do so on reserved constitutional questions. Consequently, nothing we say should be construed as a decision with respect to the right of public employees, other than city firemen, to bargain collectively.

The pertinent language in Art. 3, § 37, Wyo.Const. is this:

"The legislature shall not delegate to any special commissioner * * * any power to make, supervise or interfere with any municipal improvements, moneys, property or effects, * * * to levy taxes, or to perform any municipal functions whatever."

█ The constitutional prohibition against delegation of power is intended to

protect against the exercise of the taxing power and other purely municipal functions by officials not subject to the people's control. Evans v. West Norriton Tp. Municipal Authority, 370 Pa. 150, 87 A.2d 474, 479; Wilson v. School Dist. of Philadelphia, 328 Pa. 225, 195 A. 90, 99, 133 A.L.R. 1401; Board of County Commissioners of Albany County v. White, 79 Wyo. 420, 335 P.2d 433, 442.

■ Matters which are administrative only may be delegated without violating the constitutional prohibition against the legislature delegating to a special commissioner power to supervise or interfere with any municipal function. Stewart v. City of Cheyenne, 60 Wyo. 497, 154 P.2d 355, 356; Kleiber v. City and County of San Francisco, 18 Cal.2d 718, 117 P.2d 657, 659. Indeed it is not at all unusual to have boards and commissions performing governmental functions as long as the taxing power and other purely municipal functions are not involved.

We need to point out that the statute under consideration in this case has to do with collective bargaining of firemen and with the arbitration of unresolved matters. No delegation of power is involved with respect to collective bargaining. The city does its own bargaining and performs whatever municipal functions are involved in this process. But, there could be no collective bargaining if the bargaining necessarily had to end with terms and conditions dictated by the city.

Therefore, if the legislature sees fit to provide for a genuine collective bargaining, an essential adjunct to the bargaining is a provision for unresolved matters to be submitted to arbitration or determined in some other manner. In State ex rel. Fire Fighters Local 279 v. Kingham, Wyo., 420 P.2d 254, 257, we pointed out that a city, as a creature of the legislature, has only such powers as have been granted to it by the state. Thus, the legislature could authorize a city to employ and pay firemen, and it could place limitations upon

the manner in which pay and working conditions shall be arrived at.

Recognition of the principle of compulsory arbitration, when collective bargaining fails, is quite common in business and industrial affairs. We have seen contracts between labor and management wherein provisions for arbitration of unresolved disputes were contained. It has never been suggested that the carrying out of such arbitration is the performance of a "municipal function."

■ Even though one of the parties in the arbitration provided for in Ch. 197 is a city, the act of arbitration is no different from the act of arbitration in business and industrial affairs. It is nothing more than the performance of arbitration, and it cannot be said to be the performance of a municipal function.

In Division 85, Amalgamated Transit Union v. Port Authority of Allegheny County, 417 Pa. 299, 208 A.2d 271, 273–274, the Supreme Court of Pennsylvania considered a statutory provision for compulsory arbitration similar to the one we are concerned with. With a constitutional provision substantially the same as Art. 3, § 37, of our constitution, it was being claimed there was an unlawful delegation of power to a special commission in violation of the Pennsylvania constitution.

The Pennsylvania court said of the contention, however, that it ignored the construction given the same constitutional provision in Tranter v. Allegheny County Authority, 316 Pa. 65, 173 A. 289, where it had been held any possible interference by private trustees with the operation of the authority was immaterial since it did not deal with municipal property, improvements, money or effects "in the sense" contemplated by the constitutional provision.

Earlier, in Erie Firefighters Local No. 293 v. Gardner, 406 Pa. 395, 178 A.2d 691, 695, the Pennsylvania supreme court spoke of the current trend toward the use of administrative bodies and stated, the basic distinction between delegable and nondeleg-

able functions (apart from the proscription against levying taxes) seems to be this:

"If the delegation of power is to make the law, which involves a discretion of what the law shall be, then the power is nondelegable. If the conferred authority is the power or discretion to execute the law already determined and circumscribed, then the delegation is unobjectionable."

■ We find nothing in Ch. 197, S.L. of Wyoming 1965, which delegates any power to make the law. The only authority conferred is power to execute the law already determined and circumscribed.

■ To illustrate the reason for such a conclusion let us briefly mention, for example, the matter of wages. It is unquestioned that the legislature has the authority to fix the exact amount of wages to be paid fire fighters. Necessarily the exercise of that power has an effect upon "moneys" belonging to the city, and the city of course is required to make expenditures in establishing its fire department according to decisions of the legislature. That much is conceded and the exercise of such power is not inhibited by the constitutional provision under discussion.

In Wyoming, the legislature by general statute has not undertaken to fix the exact amount of wages to be paid firemen. Instead, it has fixed the minimum amount with authority in the city to pay wages in excess of such amount. See § 15.1–329 (a), W.S.1957, Compiled 1965, as amended by Ch. 18, S.L. of Wyoming 1967.

Construing this general statute in pari materia with the statute now before us, it is clear that instead of fixing the maximum, the legislature has simply provided a formula through the medium of arbitration for fixing a specific amount above the minimum in the event the fire fighters exercise their statutory right of entering into a collective bargaining agreement with the city.

■ In keeping with the rationale of May v. City of Laramie, 58 Wyo. 240, 131 P.2d 300, 309, it readily appears the formula prescribed is a sufficient exercise of the power conferred upon the legislature and in no sense constitutes an interference with the "moneys" of the city within the meaning of the constitutional provision being discussed. In the *May* opinion this court said, if the legislature fixes the rule under which the compensation is fixed, that is sufficient.

■ Hence, following the supreme court of Pennsylvania, we hold the statute under consideration does not deal with municipal improvements, moneys, property or effects "in the sense" contemplated by Art. 3, § 37, Wyo.Const.; and our answer to question A is in the negative.

"B. Do the provisions of Title 27, Chapter 14, Wyoming Statutes, 1957, as amended, violate Article 2, Section 1, of the Wyoming Constitution, by delegating to a board of arbitrators and the judicial department, powers expressly reserved to the Wyoming Legislature by the Wyoming Constitution?"

■ The appropriate answer for this question is that there is no basis at all for believing the provisions referred to violate Art. 2, § 1, of the constitution. This section of the constitution states the powers of state government are divided into three departments—the legislative, executive and judicial—and none of the persons charged with the exercise of powers belonging to one of these departments shall exercise any powers belonging to either of the others except as in the constitution expressly directed or permitted.

■ Counsel for defendant-city contends the statutory procedure prescribed for arbitration violates Art. 2, § 1, "because the legislature is requiring both the board of arbitrators and the courts to exercise powers belonging to the legislature." We have been furnished no further specifications as to what powers of the legislature are supposedly involved or how they have been supposedly assigned to others. Coun-

sel does cite general authority for the rule that power to make laws cannot be delegated, and of course we are in full agreement with such a rule.

We find nothing in the statute involved which in any way suggests a violation of Art. 2, § 1, and in particular we find nothing which would suggest or indicate that either arbitrators or the courts have been delegated any power to make laws or legislate. In the absence of either reason or authority for the city's claim, we must hold there is no such violation.

Thus, the answer to question B is in the negative and to the effect that the provisions concerned do not violate Art. 2, § 1, of the constitution.

"C. Do the provisions of Title 27, Chapter 14, Wyoming Statutes, 1957, as amended, violate Article 3, Section 24, of the Wyoming Constitution, because of the failure of the title of Original House Bill No. 37, which later became Chapter 197, Session Laws of Wyoming, 1965, to clearly express all subjects embraced in the Act?"

The pertinent language in Art. 3, § 24, for our consideration is "No bill * * * shall be passed containing more than one subject, which shall be clearly expressed in its title * * *." And the title to the bill in question was this:

"AN ACT to provide for settlement of disputes concerning wages or rates of pay and other terms and conditions of employment of employees of fire departments."

■ Our court has often said the purpose of this constitutional provision is to prevent surprise or fraud in legislation. It is not intended that the title shall be an abstract of all provisions contained in a bill; or that the title must encompass all of the aspects of the statute; or that every thing therein affected need be delineated. Brinegar v. Clark, Wyo., 371 P.2d 62, 66; Morrow v. Diefenderfer, Wyo., 384 P.2d 601, 603; Board of Com'rs of Laramie County v. Stone, 7 Wyo. 280, 51 P. 605, 607.

■ In the case of In re West Highway Sanitary and Improvement Dist. v. Wyoming, 77 Wyo. 384, 317 P.2d 495, 499, the general rule was announced that the means, methods and instrumentalities for carrying out a general purpose need not be expressed in the title of an act. And in Public Service Commission of Wyoming v. Grimshaw, 49 Wyo. 158, 53 P.2d 1, 11, 109 A.L.R. 534, the principle was approved that a title may be sufficiently general and comprehensive to embrace every means and end necessary or convenient for the accomplishment of the general purpose expressed therein. This was followed in *Brinegar*, at 371 P.2d 66.

■ The language employed in *Grimshaw* is directly applicable to the title we are now concerned with. The title showed the bill was for an act to provide for settlement of disputes concerning wages and conditions of employment for fire department employees. Apparently the only objection to the title is that it fails to state how disputes concerning wages and conditions of employment were to be settled; and in particular that the title failed to notify that provisions for collective bargaining and arbitration were contained in the bill.

There is nothing unusual about collective bargaining and arbitration as a means of settling disputes concerning wages and working conditions for employees. We would venture to suggest this is probably one of the most common methods now being used for the settlement of disputes concerning wages and working conditions for employees. We fail to see how surprise or fraud can be claimed in the title.

To notify that the act is for settlement of disputes concerning wages and working conditions is sufficient to notify that some method for settlement of disputes is provided for. An ordinarily prudent person with an interest in the subject-matter would be adequately warned of what might be in the bill. It is of course possible that a title could have been drafted which would

have been more clear. On the other hand, is must not be overlooked that attempted delineation of details and a departure from a more general statement can often result in a bad title.

In Smith v. Hansen, Wyo., 386 P.2d 98, 101, we pointed out, since the legislature may make the title to an act as restrictive as it pleases, it is obvious that it may sometimes so frame a title as to preclude matters which might with entire propriety have been embraced, but which must now be excluded because the title is unnecessarily restrictive and the courts cannot enlarge the scope of the title. We found that to have happened in the *Smith* case. If the title for the act now being dealt with had been restricted in the manner which the city contends for, it is entirely possible the act would be suffering the same fate as the act in the *Smith* case did.

Our answer to question C is no, the provisions referred to do not violate Art. 3, § 24, of the constitution.

"D. Do the provisions of Title 27, Chapter 14, Wyoming Statutes, 1957, as amended, violate Article 3, Section 24 of the Wyoming Constitution, because Original House Bill No. 37, which became Chapter 197, Session Laws of Wyoming, 1965, contained more than one subject?"

We find nothing in the act under consideration which does not pertain to the single subject of settlement of disputes concerning wages or rates of pay and other terms and conditions of employment of employees of fire departments.

In Board of Com'rs. of Laramie County v. Stone, 7 Wyo. 280, 51 P. 605, 607, the view was accepted that Art. 3, § 24, was not intended to prevent the incorporation into a single act of the entire statutory law upon one general subject, but only that every provision must be germane to the subject expressed in the title. See also Morrow v. Diefenderfer, Wyo., 384 P.2d 601, 602, where the matter of germaneness was discussed.

In order to constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other. English v. Smith, 71 Wyo. 28, 71 Wyo. 1, 253 P.2d 857, 257 P.2d 365. As further stated in *English,* the subject in a bill may be as comprehensive as the legislature chooses to make it; it may include innumerable minor subjects, provided all the minor subjects, when combined, form only one general subject or topic; and the constitutional provision should not be so construed as to prevent the legislature from embracing in one act all matter properly connected with one general subject.

These principles have been consistently followed in our court, and as far as the statute considered is concerned, we find in it nothing but matter properly connected with the one general subject of settlement of disputes concerning wages or rates of pay and other terms and conditions of employment of employees of fire departments.

Our answer to question D is no, the provisions referred to do not violate Art. 3, § 24, of the constitution.

"E. Do the provisions of Title 27, Chapter 14, Wyoming Statues, 1957, as amended, violate the provisions of Article 19, Section 8, of the Wyoming Constitution, because it constitutes a mandatory direction to submit various matters of difference to arbitrators without the voluntary consent of the governing body of Defendant City of Laramie?"

The provisions of Art. 19, § 8, of the constitution are these:

"The legislature may provide by law for the voluntary submission of differences to arbitrators for determination and said arbitrators shall have such powers and duties as may be prescribed by law; but they shall have no power to render judgment to be obligatory on parties; unless they voluntarily submit their

matters of difference and agree to abide the judgment of such arbitrators."

Counsel for defendant-city contends the statute complained against attempts to impose compulsory arbitration upon the city and constitutes a violation of Art. 19, § 8, because the voluntary consent of the governing body of the city has not been given. Counsel concedes, however, that he finds no authority to sustain his contention.

Section 7 of Ch. 197, S.L. of Wyoming 1965, specifies that arbitration shall proceed pursuant to the provisions of the Uniform Arbitration Act. That act is Ch. 116, S.L. of Wyoming 1959. It contains ample provisions for court intervention and for appeal to courts of jurisdiction.

We have heretofore in this opinion referred to a city as a creature of the legislature, having only such powers as are granted to it by the state. If that be so, then certainly the state can direct cities to submit labor disputes with firemen to arbitration, and the consent or lack of consent of the city would be immaterial. See Stewart v. City of Cheyenne, 60 Wyo. 497, 154 P.2d 355, 362; Whipps v. Town of Greybull, 56 Wyo. 355, 109 P.2d 805, 807, 146 A.L.R. 596; and Lakota Oil & Gas Co., v. City of Casper, 57 Wyo. 329, 116 P.2d 861, 867.

We also previously referred to May v. City of Laramie, 58 Wyo. 240, 131 P.2d 300, 309, wherein consideration was given to the fixing of salaries for municipal officials and employees, and it was stated, "if the legislature fixes the rule under which the compensation is to be fixed, that is sufficient." This would seem to be compatible with legislation prescribing the fixing of salaries by collective bargaining and arbitration.

Our answer to question E is no, the provisions referred to do not violate Art. 19, § 8, of the constitution, because of a mandatory direction for arbitration without the voluntary consent of the governing body of the city.

"F. Do the provisions of Title 27, Chapter 14, Wyoming Statutes, 1957, as amended, violate the provisions of Article 19, Section 8, of the Wyoming Constitution, because any judgment resulting from involuntary arbitration under the said title would be obligatory and binding on the parties thereto?"

Neither counsel for the city nor the plaintiffs has offered us any assistance or comments with respect to this question. We call attention, however, to the fact that Art. 19, § 8, of the constitution is permissive only, granting to the legislature the right to provide for the voluntary submission of differences to arbitration, and then specifying that in such proceedings the arbitration award shall not have the effect of a judgment unless the parties previously agree to abide by the judgment of the arbitrators.

We are not dealing with such an arbitration, however, and Art. 19, § 8 has no application. The fact that the legislature has been authorized to provide by law for the voluntary submission of differences to arbitration, does not foreclose the right of the legislature to provide for the kind of arbitration specified in Ch. 197, S.L. of Wyoming 1965, unless other constitutional limitations or prohibitions prevent such action. If there are constitutional limitations or prohibitions preventing the legislature from doing what it has done in Ch. 197, aside from the matters we have discussed, they have not been called to our attention.

We think the provisions of Ch. 197, S.L. of Wyoming 1965, together with the Uniform Arbitration Act (Ch. 116, S.L. of Wyoming 1959) sufficiently show what the effect of arbitration decisions will be, and we need not comment further on that. Our answer to question F is no, the provisions referred to do not violate the provisions of Art. 19, § 8, of the constitution, because any judgment resulting from involuntary arbitration would be binding on the parties.

*Summary*

Our answer to each of the six questions reserved has been in the negative. This means we find the provisions of Ch. 197, S.L. of Wyoming 1965, do not violate any of the provisions of the Wyoming Constitution which have been referred to in the questions reserved to us.

The case is remanded, with all reserved questions answered, for further proceedings consistent with this opinion.

Mr. Justice PARKER, with whom Mr. Chief Justice HARNSBERGER joins, concurring.

Although the rationale of the majority opinion fails to convince me of its correctness and I think that certain of the statements made therein are unduly broad, I am in agreement with the result that the statute in issue is not unconstitutional on any of the six grounds announced. I reach my decision initially for the reason that defendants here have failed to meet their burden of proof. It must be clear that a statute is unconstitutional before it is so held; this makes applicable the rule that the person claiming unconstitutionality has the burden of proving such contention. City of Rawlins v. Frontier Refining Company, Wyo., 396 P.2d 740, 744; Kuntz v. Kinne, Wyo., 395 P.2d 286, 288–289. Additionally, we have in effect resolved the matter heretofore in State ex rel. Fire Fighters Local 279, I.A.F.F., v. Kingham, Wyo., 420 P.2d 254, 257–258. The portion of that opinion beginning with the last part-paragraph on page 257 indicates that a city, being a creature of the legislature, has only such powers as have been granted to it by the State and is in no position to object legally when the powers theretofore granted are narrowed by the legislature, its remedy being to convince the legislature that the restriction is bad policy. Notwithstanding the fact that counsel in the present case have indicated such statements in Kingham to be dicta, I think they effectively dispose of the matter before us.